**IN THE COURT OF APPEALS OF IOWA**

No. 25-0042
Filed March 19, 2025

**IN THE INTEREST OF L.R.,**
**Minor Child,**

**H.C., Father,**
      Appellant.
_____

      Appeal from the Iowa District Court for Scott County, Korie Talkington, Judge.

      A father appeals the termination of his parental rights to his son. **AFFIRMED.**

      Paige E. Hillyer, Davenport, for appellant father.

      Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

      Steven W. Stickle of Stickle Law Firm, P.L.C., Davenport, attorney and guardian ad litem for minor child.

      Considered by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

A son was born while both his parents were incarcerated. So he spent the next fifteen months in the care of his cousin. By the time his father was released from prison, the Iowa Department of Health and Human Services believed the time had come for permanency. And so, the State petitioned to terminate the father's parental rights about two weeks after his release.

In the few months between his release and the final termination hearing, the father tried to show he could care for the son. But although he secured housing and full-time employment, he participated in no Department-supervised visits with the son during the month leading up to the final termination hearing. Instead, he chose to only visit his son for an hour or two while the cousin supervised, preventing the Department from observing the father's parenting. What's more, he continued to use marijuana, despite having a history of substance use and never completing treatment. Because the son was now eighteen months old and the evidence showed the father could not safely care for the son, the juvenile court terminated the father's parental rights.

The father appeals, arguing that termination is not in the son's best interest and the bond exception should preclude termination. Yet while the son and his father do share a bond, the son is also very much bonded with his cousin. And the son's limited visits with his father over four months have not led to a bond so strong that would render termination detrimental. Nor is a guardianship a preferable alternative for the son, who has been out of his father's care for his entire life and has found stability with his cousin. Thus, termination of the father's parental rights is in the son's best interest and the bond exception does not preclude termination.

## I.      Factual Background and Proceedings

When the son was born in May 2023, both his mother and father were incarcerated.[1]  The Department implemented a safety plan that placed the son in the care of his maternal cousin.  In August, the son was adjudicated in need of assistance and formally placed in his cousin's custody.  At the time of adjudication, the son's father was not yet known.  Two months later, paternity testing confirmed that the appellant here is the son's father.

The father has a lengthy criminal history.  This most recent incarceration stemmed from second-degree burglary and domestic abuse assault convictions in 2018 and later violations of his probation by committing additional offenses, including eluding, second-degree criminal mischief, and operating while intoxicated.  After learning he was the son's father, he began having virtual and phone conversations with the son from prison.  He also participated in parenting courses.

The father remained in prison until August 2024, when the son was nearly fifteen months old.  Given the son's prolonged period without a parent present in his life, the State petitioned to terminate the father's rights about two weeks after the father's release.[2]  And a termination hearing was scheduled across two days—the first in late November and another about a month later in December.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

[2] The mother remained incarcerated throughout these proceedings and also had her parental rights terminated.  Because she does not appeal, we focus on the father.

Upon release, the father split his time between living with his dad[3] and his girlfriend, who had a history of substance-related criminal convictions. As for his own substance use, the father acknowledged using illegal substances more than ten years ago but insisted he was now "clean." Yet the father regularly used marijuana after his release and never produced a negative drug test to the Department. Indeed, while the father acknowledged he used to "fall back" on "doing drugs"—specifically heroin and methamphetamine—when things got hard, he has never participated in substance-use treatment.

As for the son, the father began visiting the son soon after his release without informing the Department. The Department later instructed that visits need to be supervised and offered the father two Department-supervised visits with the son each week, with the option of additional visits supervised by the cousin if she agreed. While the father at first participated in visits, he did not have any Department-supervised visits with the son in the month between the first and second days of the termination hearing. Instead, he only arranged visits through the son's cousin—lasting an hour or two—which kept the Department from observing the father care for the son in the weeks just before the final termination hearing. To that end, the father testified that he did not believe his visits needed to be supervised, as he's "never hurt anyone" and "never been in trouble with drugs or any of that."

---

[3] The father had four other children and his parental rights to each child was terminated in prior proceedings. The father's dad has since adopted those children.

After the two-day hearing, the juvenile court terminated the father's parental rights under paragraphs "e," "h," and "l" of Iowa Code section 232.116(1) (2024). The court emphasized the father's failure to participate in supervised visits, his ongoing substance use, his lack of mental-health or substance-use treatment, and his reluctance to accept "the harm his life choices" have caused the son. The court also found that terminating the father's rights, rather than imposing a guardianship, best served the son, as he "is in need of permanency and should not have to wait any longer." And the court declined to apply any statutory exceptions to termination, finding the need for permanency outweighed the relative-custody exception and the child's four-month relationship with the father has not produced a bond "so strong as to make termination detrimental."

The father now appeals, challenging the juvenile court's best-interest and bond-exception rulings.[4]

## II.   The Son's Best Interest

The State carries the burden to prove by clear and convincing evidence that terminating the father's parental rights is in the son's best interest. *See* Iowa Code § 232.116(2). When weighing the son's best interest, we "give primary

---

[4] In his petition on appeal, the father summarily mentions that the "State did not show by clear and convincing evidence that the child could not be returned to the father's care," citing Iowa Code section 232.116(1)(f). Yet the father's rights were not terminated under paragraph "f." And even if we construed the argument as being under paragraph "h," the father does not address the other two grounds for termination. So we will only consider properly submitted issues of the son's best interest and whether any statutory exceptions should preclude termination. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (explaining we need not address uncontested statutory grounds); *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* Although our review is de novo, we give due weight to the juvenile court's factual findings. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

The father's best-interest argument is twofold: (1) severing the close bond between him and the son would cause the son considerable harm and (2) placing the son in a guardianship would have protected the son while allowing the father more time after his release to prove he can safely care for the child. As for their bond, we must always be mindful of "the harms that occur when children are taken from their parents." *In re D.C.*, No. 24-1258, 2024 WL 4503211, at *3 (Iowa Ct. App. Oct. 16, 2024). And multiple witnesses indeed described the son as being very comfortable with his father and routinely excited to see him. Yet the son is also very much bonded with his cousin—she is the only parent that he's ever known. Viewing the entire record, we agree with the juvenile court that the son's brief, supervised visits with his father over four months have not produced the kind of bond that renders termination harmful to the son.

As for a guardianship, the father emphasizes the relatively short period between his release and termination and argues a guardianship would give him more time to produce negative drug screens and otherwise prove capable of caring for the son. But the father downplays that his own criminal activity—not any action of the Department or the court—caused his absence from the first fifteen months of the son's life. As we often stress, "children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). So our

best-interest analysis turns on what is best for the son, not what is most beneficial to the parent. *See* Iowa Code § 232.116(2). For that reason, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (finding a guardianship not in a two-year-old daughter's best interest because of the substantial length of time the child would be left in limbo and because it would be "woefully inadequate to achieve the sort of stable, nurturing and permanent home she both needs and deserves"). Thus, we agree with the juvenile court that the son deserves permanency now and termination is in his best interest.

### III. Exceptions to Termination

Finally, and relatedly, the father argues that the juvenile court should have avoided termination under the statutory bond exception. The father carries the burden to show by clear and convincing evidence that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). As discussed above, although testimony did show some bond between the father and the son, we do not find their relationship so strong as to render termination detrimental. And the mere existence of a bond or a parent's love for the child is not enough to overcome termination. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (declining to apply bond exception despite "some bond between" the parent and children, as the children had been out of the parent's care for nearly two years and had "achieved stability" in a relative's care). So, like the juvenile court, we decline to apply a permissive exception to avoid termination.

**AFFIRMED.**